621 S.E.2d 38

**HITACHI ELECTRONIC DEVICES (USA), INC., Respondent,**

v.

**PLATINUM TECHNOLOGIES, INC., Platinum Technology Financial Services, Computer Associates International, Inc., NewCourt Financial USA, Inc., and CIT Group, Inc., Defendants,**

**Of which Platinum Technologies, Inc., Platinum Technology Financial Services, and Computer Associates International, Inc. are Petitioners.**

No. 26048.

Supreme Court of South Carolina.

Heard Sept. 20, 2005.

Decided Oct. 17, 2005.

H. Donald Sellers, Boyd B. Nicholson, Jr., and Joel M. Bondurant, Jr., all of Haynsworth Sinkler Boyd, PA, of Greenville, for Petitioners.

William S. Brown and Henry M. Burwell, both of Nelson Mullins Riley & Scarborough, of Greenville, for Respondent.

Justice PLEICONES:

This is a breach-of-contract action involving a contract for the sale of goods. By consent of the parties, the action was tried by a master-in-equity, who ordered judgment for the petitioners (the Seller) and the other defendants. In an unpublished opinion, the Court of Appeals affirmed in part and reversed in part and remanded the case for trial. *Hitachi Elec. Devices (USA), Inc. v. Platinum Tech., Inc.,* Op. No. 2003–UP–766 (S.C. Ct.App. filed December 31, 2003). We granted a writ of certiorari and now reverse the decision of the Court of Appeals.

## FACTS

The Seller sold goods to the respondent (the Buyer). The sales contract contained a warranty of performance, but the contract also provided for a particular remedy in the event of a breach of that warranty: repair the goods, replace the goods, or refund the purchase price.[1]

Approximately one year after taking delivery of the goods, the Buyer returned them to the Seller claiming rejection of the goods as non-conforming and demanding a refund of the purchase price. The Seller refused, and the Buyer brought this action.

The master ruled in favor of the Seller. The master held that the Buyer had accepted the goods because the Buyer had failed to reject them within a reasonable time after their delivery, as required by article 2 of the Uniform Commercial Code[2] (the U.C.C. or the Code). *See* S.C.Code Ann. § 36–2–602(1) (2003). The master also held that the Buyer had failed to give notice of breach to the Seller within a reasonable time after taking delivery, another article 2 requirement. *See* S.C.Code Ann. § 36–2–607(3)(a) (2003). Consequently, the master held, the Buyer was prevented from maintaining its breach-of-contract action.

---

1. We hereinafter refer to this remedy as the "repair or replace remedy."

2. S.C.Code Ann. §§ 36–2–101 to –725 (2003).

The Court of Appeals reversed. The court affirmed the master's holdings that the Buyer had accepted the goods and failed to give seasonable notice of breach. The court disagreed, however, that the failure to give seasonable notice of breach prevented the Buyer from maintaining its action. According to the court, the failure prevented the Buyer from pursuing remedies specifically listed in article 2, but not from maintaining its action as a common-law breach-of-contract action in pursuit of the repair-or-replace remedy and common-law remedies. The court therefore remanded the case for trial on whether the Seller breached and whether the Buyer was entitled to the contractual remedy, common-law remedies, or both.[3]

## ISSUES

I.  Whether failure to give timely notice of breach to its seller prevents a buyer of goods from pursuing a contractual remedy intended by the parties to substitute for U.C.C. article 2's default remedies.
II.  Whether a buyer can bring a common-law action to recover common-law remedies for breach of a U.C.C. article 2 warranty.

## ANALYSIS

At this point in the litigation, there is no dispute that article 2 of the U.C.C. applies to the transaction or that the warranty allegedly breached is an article 2 warranty. Likewise, there is no dispute that the Buyer accepted the goods. Acceptance, however, "does not of itself impair any other remedy provided by [article 2] for nonconformity." S.C.Code Ann. § 36–2–607(2) (2003). A buyer who has accepted non-conforming goods can, in limited circumstances, revoke acceptance, or he can recover damages for breach of warranty. S.C.Code Ann. §§ 36–2–608 and –714 (2003).

To revoke acceptance or recover damages, however, "the buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach

---

3. Seven members of the Court of Appeals declined to rehear the case *en banc*.

or be barred from any remedy ...." § 36–2–607(3)(a). There is currently no dispute that the Buyer failed to seasonably notify the Seller of the alleged breach of warranty. Only the effect of this failure is disputed.

## I. The Repair-or-Replace Remedy

■ The Buyer's failure to give seasonable notice of breach prevents the Buyer from pursuing the repair-or-replace remedy provided in the parties' contract. The Court of Appeals' holding to the contrary is reversed.

■ As quoted above, article 2 states that a buyer who has failed to give seasonable notice of breach is "barred from any remedy." § 36–2–607(3)(a). "The cardinal rule of statutory construction is to ascertain and effectuate the intent of the legislature.... Where the statute's language is plain and unambiguous, and conveys a clear and definite meaning, the rules of statutory interpretation are not needed and the court has no right to impose another meaning." *Hodges v. Rainey*, 341 S.C. 79, 85, 533 S.E.2d 578, 581 (2000) (citations omitted). The phrase "any remedy" in section 36–2–607(3)(a) is plain and unambiguous; it encompasses all potential remedies for breach of an article 2 contract. There is no dispute that the repair-or-replace remedy was crafted as a remedy for breach of the parties' article 2 contract, so the Buyer's failure to comply with section 36–2–607(3)(a) bars the Buyer from this remedy.

■ The Court of Appeals' opinion misapprehends that although article 2 permits parties to substitute remedies for article 2's default remedies,[4] the contract remains an article 2 contract. Every other provision of article 2 continues to apply unless the provision is not mandatory and the parties opt out of it. In fact, most sections of the U.C.C. merely provide default terms that can be altered by agreement; only a few are mandatory.[5]

---

4. Article 2 permits parties to agree to "remedies in addition to or in substitution for those provided in [article 2] and [ ] limit or alter the measure of damages recoverable under [article 2], as by limiting the buyer's remedies to return of the goods and repayment of the price or to repair and replacement of nonconforming goods or parts." S.C.Code Ann. § 36–2–719(1)(a) (2003).

5. Section 36–1–102(3) states the following:

Here, the parties could have agreed that section 36–2–607(3)(a) would not apply in the event of breach. The parties could have agreed that notice of breach would not be required at all, or they could have agreed upon a specific method of giving notice and a specific time frame within which to give it. Since the parties did not opt out of section 36–2–607(3)(a), seasonable notice of breach of warranty was a condition precedent to the Seller's obligation to fulfill its remedial promise to repair, replace, or refund.

## II. COMMON-LAW REMEDIES

■ We also reverse the Court of Appeals' holding that the Buyer's failure to comply with section 36–2–607(3)(a) did not prevent it from pursuing common-law remedies for the alleged breach of warranty.

■ As we have stated, the phrase "any remedy" in section 36–2–607(3)(a) is plain and unambiguous. It is broad enough to encompass common-law remedies. Thus, a party to an article 2 contract must give seasonable notice of breach in order to recover common-law remedies for breach of that article 2 contract. Here, the Buyer failed to give seasonable notice, so it cannot recover.

■ Notwithstanding lack of seasonable notice, the Buyer cannot recover the common-law remedies it seeks for a simpler reason: they do not exist. The Buyer alleges that the Seller breached this article 2 contract by breaching its warranty of the goods' performance. Remedies for this type of breach are available exclusively under article 2 of the Code.

---

The effect of provisions of this act may be varied by agreement, except as otherwise provided in this act and except that the obligations of good faith, diligence, reasonableness and care prescribed by this act may not be disclaimed by agreement but the parties may by agreement determine the standards by which the performance of such obligations is to be measured if such standards are not manifestly unreasonable.
S.C.Code Ann. § 36–1–102(3) (2003).
Section 36–1–102(4) adds that "[t]he presence in certain provisions of this act of the words 'unless otherwise agreed' or words of similar import does not imply that the effect of other provisions may not be varied by agreement under subsection (3)." S.C.Code Ann. § 36–1–102(4) (2003).

■ Only where the U.C.C. is incomplete does the common law provide applicable rules. On this point, South Carolina Code section 36–1–103[6] states the following:

> Unless displaced by the particular provisions of [the U.C.C.], the principles of law and equity, including the law merchant and the law relative to capacity to contract, principal and agent, estoppel, fraud, misrepresentation, duress, coercion, mistake, bankruptcy or other validating or invalidating cause shall supplement its provisions.

Displacement occurs when one or more particular provisions of the U.C.C. comprehensively address a particular subject. *Flavor–Inn, Inc. v. NCNB Nat'l Bank of S.C.,* 309 S.C. 508, 511, 424 S.E.2d 534, 536 (Ct.App.1992) (discussing *Equitable Life Assurance Soc'y of the U.S. v. Okey,* 812 F.2d 906, 908–911 (4th Cir.1987) (applying South Carolina law and explaining that comprehensive treatment of a particular subject by the U.C.C. renders the common law displaced)).

Article 2 comprehensively addresses a buyer's remedies for breach of warranty. A buyer's first recourse is to reject the non-conforming goods. *See* S.C.Code Ann. § 36–2–601(a) (2003). In some cases, a buyer who has accepted non-conforming goods may revoke his acceptance. *See* § 36–2–608. Generally, however, the remedy is damages,[7] and the usual measure "is the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted." S.C.Code Ann. § 36–2–714(2) (2003). Article 2 recognizes, however, that in some cases other methods of calculating damages may be more appropriate, and article 2 permits use of any method reasonable under the circumstances. S.C.Code Ann. § 36–2–714(1)–(2) (2003). In addition, article 2 permits recovery of incidental and consequential damages. S.C.Code Ann. §§ 36–2–714(3) and –715 (2003). This comprehensive system of remedies for breach of warranty displaces the common law.

---

**6.** S.C.Code Ann. § 36–1–103 (2003).

**7.** The Buyer seeks damages in this case. In fact, the Buyer argues that it is entitled to damages under the common law in addition to the repair-or-replace remedy. Notwithstanding the lack of merit in its arguments for any recovery, the Buyer does not explain why it believes it is entitled to a double recovery.

Consequently, the Buyer cannot pursue common-law remedies for the Seller's alleged breach of warranty.

## CONCLUSION

This case involves a contract governed by article 2 of the U.C.C. The Court of Appeals' holding that the Buyer's failure to comply with Code section 36–2–607(3)(a) did not prevent the Buyer from pursuing a contractual or common-law remedy, or both, would effectively render article 2 pointless with respect to breach-of-warranty claims. The decision of the Court of Appeals is therefore

**REVERSED.**

TOAL, C.J., MOORE, WALLER and BURNETT, JJ., concur.